IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ARNETTA DUNCAN-WATTS,<br><br>                    Plaintiff,<br><br>vs.<br><br>NESTLE USA, INC., et al.,<br><br>                    Defendants. | CASE NO. 1:19-CV-01437-PAG<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

## I. INTRODUCTION

Plaintiff Arnetta Duncan-Watts is a former Nestlé USA, Inc.[1] employee who worked at Nestlé's food production facility in Solon, Ohio. Plaintiff alleges that she and other employees were required to put on ("don") work uniforms and certain personal protective equipment ("PPE"), such as earplugs, steel-toed shoes and hairnets, before their shifts and then take them off ("doff") at the end of their shifts. Plaintiff claims Nestlé violated the Fair Labor Standards Act ("FLSA") and Ohio Minimum Fair Wage Standards Act ("OMFWSA") because it did not pay her and others for this donning and doffing time, which allegedly caused an underpayment of overtime. Plaintiff also alleges that she was not paid for the time it took her to walk from the

---

[1] Plaintiff collectively refers to defendants Nestlé USA, Inc. and Nestlé Prepared Foods Company as "Defendants" in her Amended Complaint. (Dkt. 18, p. 1). However, Nestlé USA, Inc. was never her employer during the period at issue in this litigation. For ease of reference only and while reserving the right to challenge the propriety of the named entities as proper defendants, this memorandum will also refer to defendants collectively, either as "defendants" or "Nestlé."

locker room across the hall to the punch clock after donning and doffing, or for the time she waited at the clock until her shift began.

Plaintiff's Amended Complaint fails to allege facts that would state a plausible claim under the FLSA or OMFWSA. The Supreme Court has held that such alleged pre- and post-work time is only compensable if it is "integral and indispensable" to the plaintiff's principal activities. In plain(ish) English, "an activity is integral and indispensable to the work an employee was hired to do if it is a component of that work, and he cannot complete the work without it."

Here, plaintiff alleges only that she was a "production employee" who was "involved" in the "manufacturing, packaging, and handling of food." Rather than attempt to explain how the alleged donning and doffing is integral and indispensable to her undefined principal activities, plaintiff alleges that because some of the donning activities are essential to Nestlé's production of safe and untainted food products and are required by law, the activities must be compensable under the FLSA. However, no such rule exists, and plaintiffs have not and cannot allege facts that would state a plausible claim that the alleged donning and doffing constitutes compensable work under the FLSA or OMFWSA. In fact, the Sixth Circuit has found that very similar donning and doffing activities are <u>not</u> necessary for food production workers to do their jobs for purposes of the FLSA. Thus, defendants respectfully submit that plaintiff's Amended Complaint should be dismissed with prejudice.

## II.    **SUMMARY OF THE AMENDED COMPLAINT'S ALLEGATIONS**

Taking the factual allegations of the Amended Complaint as true for purposes of this Motion only, plaintiff worked as a non-exempt "production employee" who was "involved in the manufacturing, packaging, and handling of food" at Nestlé's Solon, Ohio factory until her separation in 2018. (Dkt. 18, Pltf's Am. Compl., ¶¶ 41, 52). The Amended Complaint alleges

that prior to the start of plaintiff's shift, she and other "similarly situated" employees were required to don "sanitary clothing and other protective equipment, including, but not limited to, sanitary clothing, uniforms, pants, shirts, lab coats, hair nets, gloves, steel-toed shoes, and safety glasses" (personal protective equipment, or "PPE")  (*Id.* at ¶¶ 42, 53).  The Amended Complaint alleges that plaintiff was then required to walk from Nestlé's locker room to a time clock and then wait for her shift to begin before clocking in and entering the production floor.  (*Id.* at ¶¶ 54-55).  At the end of plaintiff's shift, she was allegedly required to clock out before walking to a Nestlé locker room and removing her work clothes and PPE.  (*Id.* at ¶¶ 56-57).

The Amended Complaint alleges that Nestlé violated the FLSA and OMFWSA because plaintiff and the putative class members "were not paid for all of the time spent donning and doffing their sanitary clothing and other protective equipment, or for associated travel" and, thus, were not paid overtime compensation for all hours worked over 40 in each workweek.  (*Id.* at ¶¶ 59, 61, 76-79, 88-89).  The Amended Complaint also alleges that plaintiff and other "similarly situated" employees were required to don the required clothing and PPE in order to ensure that Nestlé complied with various federal and state food safety laws.  (*Id.* at ¶¶ 29-36).  The Amended Complaint further asserts the legal conclusion that the time plaintiff and the putative class members spent donning and doffing was "integral and indispensable to the work performed by Plaintiff" because the donning and doffing was required by law and a "component" of the work she was hired to do.  (*See id.* at ¶¶ 43-50).  However, the Amended Complaint does not say what plaintiff was hired to do or what her job duties and responsibilities were, other than generally alleging that she was "involved" in the "manufacturing, packaging, and handling of food."  (*See id.*).

### III. MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Rather, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Thus, "[l]egal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal review." *Carter v. PJS of Parma, Inc.*, 2016 WL 1316354 *2 (N.D. Ohio April 4, 2016).

### IV. RELEVANT STATUTES

#### A. The Fair Labor Standards Act

Enacted in 1938, the FLSA governs minimum wages and maximum hours for non-exempt employees and "provides that 'employee' generally means 'any individual employed by an employer' and, in turn, provides that to 'employ' is 'to suffer or permit to work.'" *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 875 (2014). "The Act did not, however, define the key terms 'work' and 'workweek.'" *Id.* The FLSA's failure to define these terms "soon let loose a landslide of litigation" that culminated in its holding in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692-93 (1946), that "time spent pursu[ing] certain preliminary activities after arriving . . . , such as putting on aprons and overalls [and] removing shirts" was "clearly work" under the Act. *Id.* at 875 (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 692-93). "Organized labor seized on the [Supreme] Court's expansive construction of compensability by filing what became known as 'portal' actions (a reference to the 'portals' or entrances to mines, at which workers put on their gear)." *Id.*

-4-

B.	**The Portal-To-Portal Act**

In response to the proliferation of "portal" actions, "Congress responded swiftly" and amended the FLSA via enactment of the Portal-to-Portal Act of 1947, 61 Stat. 84, as amended, 29 U.S.C. §§ 251 et seq.  Of particular importance here, the Portal-to-Portal Act exempted two activities the Supreme Court previously deemed compensable:  (1) "walking on the employer's premises to and from the actual place of performance of the principal activity of the employee" and (2) "activities that are 'preliminary or postliminary' to that principal activity."  This, of course, demanded an answer to what constituted an employee's "principal activities."

In *Steiner v. Mitchell*, 350 U.S. 256 (1956), the Court held that principal activities are those that are an "integral and indispensable" part of the activities which the employee is employed to perform.  The *Steiner* Court held that the time battery-plant employees spent showering and clothes chemicals at work was compensable because the chemicals they worked with were "toxic to human beings" and the employer conceded that the clothes changing and showing were indispensable to the performance of their productive work and integrally related to them.  The Court simultaneously issued its decision in *Mitchell v. King Packing Co*, 350 U.S. 260 (1956), where it held the time that "knifemen" in a meat packing plant spent sharpening their tools immediately before or after their shifts or on their lunch break was compensable and relied on the findings that the knives "must be razor sharp for the proper performance of the work," and that "a knife to be of any practical value in a knife job has to be . . . sharp."   However, these decisions spurred decades of disagreement among the lower courts as to the meaning of "integral and indispensable."

In 2010, the Sixth Circuit addressed this question in the context of whether donning and doffing of uniforms and equipment was "integral and indispensable" to work performed by employees at a frozen food production facility.  *Franklin v. Kellogg Co.*, 619 F.3d 604, 618 (6th

Cir. 2010).  In *Franklin*, the plaintiffs alleged they were entitled to payment for the time spent donning and doffing "mandatory food safety uniforms and protective equipment" at a Kellogg's frozen food factory that included company-provided uniforms, hair nets, beard nets, safety glasses, ear plugs and bump caps.  *Id.* at 609.  It was undisputed that the equipment and uniforms were necessary to "ensure sanitary working conditions and untainted products."  *Id.* at 620.

In determining whether the donning and doffing was an integral and indispensable part of the employees' employment, the Sixth Circuit adopted the more liberal interpretation based largely on the reasoning of the Ninth and Eleventh Circuits.  *Id.* at 620.  Specifically, it held that the relevant factors were:  "(1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits the employer."  *Id.*  The court found that the donning and doffing was primarily for Kellogg's benefit because it ensured that the food being produced would be untainted.  It also found that Kellogg required the employees to don and doff the sanitary gear and PPE.  *Id.*  620.  Because of these two factors, the court found that the donning and doffing at issue was "integral and indispensable" (and thus compensable).  Importantly, however, the court found that the donning and doffing was <u>not</u> "necessary for the employee to perform his or her duties" because the plaintiff was "able to physically complete her job without donning the uniform and equipment . . ."  *Id.*

The Sixth Circuit's finding that the donning and doffing in *Franklin* was compensable remained good law in this Circuit for approximately four years, until the Supreme Court issued its decision in *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014).  The Court separately defined the words "integral" and "indispensable" and held that "an activity is integral and indispensable to the principal activities that an employee is employed to perform if it is an

-6-

intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* at 518 (emphasis added). "The integral and indispensable test is tied to the productive work that the employee *is employed to perform*." *Id.* at 519. For these reasons, the Court found that it is error to "focus[] on whether an employer required a particular activity" and that "[a] test that turns on whether the activity is for the benefit of the employer is similarly overbroad." 135 S. Ct. at 519. It also approvingly cited its prior decisions in *Steiner* and *Mitchell* as examples of activities that were properly found to be compensable.

Thus, as one Sixth Circuit district court aptly noted and explained, the only governing factor from the *Franklin* three-factor analysis that remains following *Integrity Staffing* is the "necessary" criterion—which the Sixth Circuit found did not support a finding that the donning and doffing activities were integral and indispensable for Kellogg's frozen food production workers. *See Whaley v. Henry Ford Health Sys.*, 172 F. Supp. 3d 994, 1004 (E.D. Mich. 2016). The Sixth Circuit eliminated any doubt that the *Whaley* court accurately summarized the state of law when it found that post-*Integrity Staffing*, "an activity is integral and indispensable to the work an employee was hired to do if it is a component of that work, and he cannot complete the work without it." *Vance v. Amazon.com, Inc. (In re Amazon.com, Inc.),* 852 F.3d 601, 609 (6th Cir. 2017); *see also Auxer v. Republic Waste Services of Ohio Hauling, LLC*, 2019 WL 1255551 (S.D. Ohio Mar. 13, 2019) (granting motion to dismiss FLSA and OMFWSA donning and doffing claims based in part on the plaintiff's failure to identify activities that were "integral and indispensable" under the Portal-to-Portal Act and as defined in *Integrity Staffing*).

C.  **Ohio State Law**

Plaintiff also brings a state law claim under the OMFWSA. The OMFWSA requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner

and methods provided in and subject to the exemptions of section 7 and section 13 of the 'Fair Labor Standards Act of 1938,' 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended." Ohio R.C. § 4111.03 (emphasis added). "Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA." *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006). The *Mitchell* court cited the Sixth Circuit's decision in *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 69 n.2 (6th Cir. 1997), which noted that Ohio's wage and hour law "parallels the FLSA" and approaching the Ohio law and the FLSA in a "unitary fashion" is appropriate. *See also Fryda v. Takeda Pharmaceuticals N. America, Inc.*, 2011 WL 1434997 *4 (N.D. Ohio Apr. 14, 2011) ("the Ohio Minimum Fair Wage Standards Act uses the same standards as the federal Fair Labor Standards Act."); *Redding v. Finn's, Inc.*, 2017 WL 3219711 *2 (N.D. Ohio July 27, 2017) ("Since both statutes contain similar standards and language, Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA."); *Auxer*, 2019 WL 1255551 *2-3 (S.D. Ohio Mar. 13, 2019) (finding that because donning and doffing claims under the FLSA were properly dismissed, the Ohio wage claims must also be dismissed because "[t]hese Ohio statutes are interpreted in tandem with the Federal FLSA.").

V. **ARGUMENT**

    A. **Plaintiff Has Not Pled Any Facts Showing That Donning And Doffing Her Work Clothes And PPE Is Compensable**

Plaintiff's Amended Complaint must be dismissed because she has not (and cannot) pled any facts which would allow for the conclusion that she engaged in donning and doffing that is compensable under the FLSA or OMWFSA. Such donning and doffing time is only compensable if it is "integral and indispensable to the principal activities that [she was] employed to perform." *Integrity Staffing*, 135 S. Ct. at 517. This means that the at-issue

donning and doffing must be an intrinsic element of the activities the employee was hired to perform and "[s]he cannot complete the work without it." *Id.*; *Amazon.com, Inc.*, 852 F.3d at 609.

The Amended Complaint contains no factually allegations as to what activities plaintiff was allegedly hired to perform, and does not attempt to allege that she was hired for the purpose of donning and doffing work clothes and PPE. Instead, Plaintiff essentially argues that a bright line rule exists under which donning and doffing of "sanitary clothing" and PPE is always integral and indispensable (and thus compensable) for employees such as herself who are "involved" in the "manufacturing, packaging, and handling of food" because some of these activities are required by law to ensure the production of untainted food. No such rule exists, and plaintiff has mistakenly treated as synonymous activities that are "important" for an employer with activities that are "integral and indispensable" to the employees' production work under the FLSA and Ohio law.

In a nearly identical situation, the Sixth Circuit found that although the donning and doffing of sanitary clothing and PPE was unquestionably *required* to ensure sanitary working conditions and food untainted products, it was not "necessary" under the integral and indispensable analysis because the employees "could still physically perform the job without the uniform and PPE." *Id.* at 620. Other courts have likewise recognized that even if an activity is important or legally required, it does not necessarily mean it is compensable under the FLSA as "integral and indispensable." *See, e.g., Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007) ("The donning and doffing of generic protective gear is not rendered integral by being required by the employer or by government regulation."); *Dinkel v. Medstar Health Inc.*, 99 F. Supp. 3d 37 (D.D.C. 2015) (uniform maintenance requirements for hospital

employees was not "integral and indispensable" under the FLSA even though it was required in part to "minimize[e] the spread of hospital-acquired infections to patients, co-workers and family members . . .").

Like the plaintiffs in *Franklin*,[2] the Amended Complaint fails to allege that plaintiff could not have "physically perform[ed]" her unidentified job duties without a uniform and PPE. This is in contrast to the battery-plant employees in *Steiner* who needed to shower and change clothes to prevent their exposure to toxic chemicals, or to the "knifemen" in *Mitchell* who needed to sharpen their knives in order to physically perform their job duties. Since the only governing factor from the *Franklin* analysis that remains following *Integrity Staffing* is this "necessary" criterion, plaintiff's claims should be dismissed with prejudice for that reason alone. *See Whaley*, 172 F. Supp. at 1004 (after *Integrity Staffing*, the only governing factor from the *Franklin* test appears to be the "necessary" criterion); *Amazon.com, Inc.*, 852 F.3d at 609 (recognizing that the "necessary" element is a required showing after *Integrity Staffing*).

Moreover, even if plaintiff had alleged sufficient facts to show that putting on work clothes and PPE is necessary/indispensable under the FLSA, her claims would still fail because she has not sufficiently alleged that these activities are an intrinsic part of her undefined food production work. An "integral" activity "form[s] an intrinsic portion or element [of the principal activities], as distinguished from an adjunct or appendage." *Integrity Staffing*, 135 S. Ct. at 517. Instructively, the Eleventh Circuit recently found that even if a police officer's donning of protective police gear such as a magazine pouch, holster, a ballistics vest and first-responders

---

[2] While the Sixth Circuit ultimately found that the activities were compensable because they were required by and primarily for the benefit of Kellogg because they ensured the production of untainted food, the Court in *Integrity Staffing* subsequently found that the Ninth Circuit's test (from which the Sixth Circuit borrowed in *Franklin*) "erred by focusing on whether an employer *required* a particular activity" and that "[a] test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Integrity Staffing*, 574 U.S. at 519.

pouch was "indispensable" to her police work, it "does not make the donning and doffing process an intrinsic element of law enforcement." *Llorca v. Sheriff, Collier County, Florida*, 893 F.3d 1319, 1324-25 (11th Cir. 2018). Likewise, plaintiff has failed to allege how putting on work clothes and PPE is an intrinsic part of her undefined food "production" work. Rather, she has only succeeded in pleading that the donning and doffing was required by and important to Nestlé in order to ensure the production of untainted food. That is not enough post-*Integrity Staffing* to assert an actionable claim. Thus, plaintiffs' donning and doffing claims should be dismissed with prejudice.

### B. Plaintiff Fails To State A Claim That The Alleged Wait And Travel Time Is Compensable

Plaintiff also claims that she and others engaged in compensable but unpaid time spent walking from Nestlé's locker room across the hallway to a time clock after donning her work clothes and PPE and then waiting at the time clock until the start of her scheduled shift. (Dkt. 1, ¶¶ 20-21). However, the courts and DOL have long held that such walking and waiting time is not compensable unless the employee already performed some other principal activity that started the workday. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 40-41 (2005) ("walking from a timeclock near the factory gate to a workstation is certainly necessary for employees to begin their work, but it is indisputable that the Portal-to-Portal Act evinces Congress' intent to repudiate *Anderson's* holding that such walking time was compensable under the FLSA."); *Bainbridge v. Acme Markets, Inc.*, 2012 WL 876744, *9 (E.D. Pa. Mar. 15, 2012) ("[t]ime that hourly employees must spend waiting to punch into a computerized time clock is generally a 'preliminary' activity, not 'integral and indispensable' to a principal activity that identifies the time when the continuous workday begins.'") (quoting in part *IBP, Inc. v. Alvarez*); *Medina v.*

*3C Constr. Corp.*, 2005 WL 8156725 *9 (S.D. Fla. Nov. 22, 2005) (time spent swiping badges at security gate not integral part of workers' principal activities).

Because plaintiff has not and cannot allege facts that would plausibly establish that she engaged in any principal activity <u>before</u> the challenged walking and waiting times, the walking and waiting times are non-compensable preliminary activities as a matter of law. *See id.* These claims, therefore, should be dismissed with prejudice as well.

## VI. <u>CONCLUSION</u>

Plaintiff's Amended Complaint fails to state a claim for which relief can be granted, and any attempt to further amend the Amended Complaint would be futile. Thus, defendants respectfully submit that plaintiff's Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

/s/ *Gilbert Brosky*
Gregory V. Mersol (0030838)
Gilbert Brosky (0079855)
Carrie Valdez (0094004)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Telephone:  (216) 621-0200
Facsimile:  (216) 696-0740
gmersol@bakerlaw.com
gbrosky@bakerlaw.com
cvaldez@bakerlaw.com

*Attorneys for Defendants*