UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARNETTA DUNCAN-WATTS, on behalf of herself and all others similarly situated, | ) ) ) | CASE NO.: 1:19-cv-01437 |
| | ) | CHIEF JUDGE PATRICIA A. |
| | ) | GAUGHAN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **JOINT MOTION FOR FINAL** |
| | ) | **APPROVAL OF FLSA** |
| NESTLE USA, INC., et al., | ) | **SETTLEMENT AND** |
| | ) | **PRELIMINARY APPROVAL OF** |
| Defendants. | ) | **CLASS ACTION SETTLEMENT** |

## I.  **INTRODUCTION**

This is a putative class and collective action alleging the non-payment of wages/overtime under the Fair Labor Standards Act and state law.  Following mediation, Plaintiff Arnetta Duncan-Watts ("Representative Plaintiff," "Class Representative," or "Plaintiff"), on behalf of herself and the members of proposed settlement Class ("Eligible Settlement Participants"), and Defendants Nestlé USA, Inc. and Nestlé Prepared Foods Company ("Defendants") have reached a proposed settlement.  The Parties request that the Court approve their Settlement and Release Agreement (the "Settlement") of this matter attached as Exhibit 1.

The Settlement has both a Rule 23 Settlement component and an FLSA Settlement component to cover the largest number of participants.  Part of the Settlement will be for an "opt-in" FLSA settlement collective class. The remaining part will be for a Rule 23 settlement of the parallel Ohio claims. This process was designed to promote the maximum participation in putative class/collective members and to address both state and federal claims.

As described in this motion and in the Settlement, the "FLSA Settlement" refers to : (i) the settlement of the Eligible Settlement Participants' Released Claims under the 29 U.S.C. § 216(b)

& (c) process; (ii) the Individual Liquidated Damages Payments as set forth below; and (iii) half of Class Counsel's requested attorney's fees and expenses.

As described in this motion and in the Settlement, the term "Rule 23 Settlement" means: (i) the settlement of the Eligible Settlement Participants' Released Claims under the Fed. R. Civ. P. 23(b)(3) process; (ii) the Individual Wage Payments to Eligible Settlement Participants as set forth below; and (iii) half of Class Counsel's requested attorney's fees and expenses.

In support of this motion, Representative Plaintiff and Defendants submit the following exhibits, which consist of the following documents and proposed order:

Exhibit 1:      Joint Stipulation Settlement and Release ("Settlement" or "Settlement Agreement")

Exhibit 1A:     List of Eligible Settlement Participants and an estimated Schedule of Individual Payments (Appendix 1 to the Settlement Agreement)

Exhibit 2:      Individual Settlement Agreement for Class Representative (Exhibit 1 to the Settlement Agreement)

Exhibit 3:      Proposed Order Granting Final Approval Of The FLSA Settlement and Preliminary Approval Of The Rule 23 Settlement

Exhibit 4:      Class Notice and Consent and Release Form (Exhibit 2 to the Settlement Agreement)

Exhibit 5:      Declaration of Jeffrey J. Moyle

The Settlement is more complex than a standard wage and hour settlement because it has both an FLSA and Rule 23 component and because coordination of the different "opt-in" and "opt-out" provisions of the two requires the parties to take multiple steps.  All the Eligible Settlement Participants have alleged claims under the FLSA and Ohio law.  Thus, under the proposed Settlement all Eligible Settlement Participants would be sent an opt-in form under the traditional FLSA opt-in process to participate in the Settlement and receive payment.  Eligible Settlement Participants would receive a payment for alleged FLSA liquidated damages in the amounts

2

reflected in Exhibit 1(A) if they timely sign and return the opt-in notice.  In addition, Eligible Settlement Participants who timely sign and return the opt-in notice will receive a proportional share of any liquidated damages allocated to Eligible Settlement Participants who do not timely opt-in as additional liquidated and other available non-wage relief under the FLSA and Ohio law and be paid as part of their Individual Liquidated Damages Payment ("Additional Non-Wage Payment").  The proposed settlement notice for the Eligible Settlement Participants (Exhibit 4) contains the proposed opt-in notice.

As alleged in the Amended Complaint, the Eligible Settlement Participants have also asserted Ohio state law wage and hour claims in addition to their FLSA claims.  Under the proposed Settlement, the Eligible Settlement Participants would receive the liquidated damages amount reflected in Exhibit 1(A) if they timely sign and return the opt-in notice attached to the proposed settlement notice (Exhibit 4).  However, they would also automatically receive the lost wages amount reflected in Exhibit 1(A) pursuant to the Rule 23 settlement process if they do not timely opt-out of the Settlement.  This is also described in the Class Notice attached as Exhibit 4.

The Parties have submitted a proposed Order for the FLSA and Rule 23 Settlement (Exhibit 3).  As described below, the proposed order reflects the Parties' request that the Court: (1) approve the Parties' Settlement attached as Exhibit 1; (2) grant final approval of the FLSA Settlement, including the proposed Individual Liquidated Damages Payments to Eligible Settlement Participants who timely submit Consent and Release Forms along with any Additional Non-Wage Payment, and direct distribution of notice attached as Exhibit 4 to the Eligible Settlement Participants; (3) grant preliminary approval of the Rule 23 Settlement and direct distribution of notice attached as Exhibit 4 to the Eligible Settlement Participants; (4) designate Representative Plaintiff as Class Representative of both the FLSA Class and the Rule 23 Class; (5) approve Class

Representative's requests for a Service Award; (6) designate Plaintiff's Counsel as Class Counsel;

(7) grant final approval of Class Counsel's request for attorney's fees and costs as part of the FLSA

Settlement; (8) preliminarily approve Class Counsel's request for attorney's fees and costs as part

of the Rule 23 Settlement; (9) direct Defendants to produce the names, last known home address

and social security numbers of all Eligible Settlement Participants to the Third-Party Settlement

Administrator within 14 days of the Court's entry of an order granting this motion; and (10) set a

final approval hearing for the Rule 23 Settlement at a date no sooner than 110 days after the Court

grants the Parties' Motion.  Ten days prior to the final approval hearing, the Parties will submit a

Joint Motion for Final Approval of the Rule 23 Settlement.

The following schedule sets forth a proposed sequence for the Settlement:

- Within fourteen (14) days after entry of the Preliminary Approval of the Rule 23 Settlement and Final Approval of the FLSA Settlement:  Defendants, upon order of the Court, will provide to the Third-Party Administrator a list that includes the following information for each Eligible Settlement Participant: name, last known home address, social security numbers and unique identifier; and Class Counsel will provide the Third-Party Administrator with the Schedule of Individual Payments as reflected in Exhibit 1(A);  and

- Fifteen (15) business days after receiving the information from Defendants and Class Counsel:  The Third-Party Administrator will distribute the notice approved by the Court.  The notices will be sent by First Class U.S. Mail with an enclosed postage pre-paid return envelope addressed to the Third-Party Administrator.  Any notices returned as undeliverable shall be traced by the Third-Party Administrator one time to obtain a new address and re-mailed one time by First Class Mail; and

- Forty-Five (45) days after mailing of the Notices:  Last day for Eligible Settlement Participants to submit written objections to the Rule 23 Settlement and for Eligible Settlement Participants to opt-in to the FLSA Settlement; and

- At least One Hundred Ten days (110) days after Preliminary Approval of the Rule 23 Settlement and Final Approval of the FLSA Settlement: Final Settlement approval hearing at **[TIME TO BE SET BY COURT]**; and

- No later than ten (10) days prior to the final approval hearing:  The Parties will submit a Joint Motion for Final Approval of the Rule 23 Settlement; and

- Within thirty (30) days after the Effective Date of the Settlement: Defendants shall deposit the Total Eligible Settlement Amount into the QSF provided the Court has approved all the requested amounts; and

- Within Fifteen (15) days after Defendants deposit funds: The Third-Party Administrator shall make all requirement payments to participating Eligible Settlement Participants, the Class Representative Payment to Class Representative, and Class Counsel for the Court approved attorney's fees and costs.

As explained below, the Settlement Agreement was reached during arms-length negotiations between the Parties, which were conducted by a mediator and experienced counsel following investigation, and on the basis of mutual recognition of the strengths and weaknesses of each other's positions.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Action and Settlement Negotiations

On June 21, 2019, Representative Plaintiff Arnetta Duncan-Watts initiated this collective action against Defendants and alleged that Defendants unlawfully failed to pay Plaintiff and other similarly-situated overtime eligible employees ("Eligible Settlement Participants") for all hours worked, including but not limited to overtime for alleged "off the clock" work in the form of "donning and doffing" time and related travel time in violation of the FLSA, 29 U.S.C. §§ 201-219 et seq., as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy alleged violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03.  On August 29, 2019, Plaintiff filed her Amended Complaint alleging the same claims.

The Parties engaged in informal discovery regarding Plaintiff's claims and Defendants' defenses to such claims, which included Defendants providing a copy of its relevant policy and information that allowed Class Counsel to assess the percentage of workweeks in which overtime could be implicated if alleged "off the clock" work was added and the value of that time.

On November 26, 2019, the Parties participated in an all-day mediation session before private mediator Michael Ungar.  The Parties were not able to reach a resolution at the mediation. However, in the following months the Parties continued to negotiate while continuing to fervently litigate their respective positions.  With the assistance of Mr. Ungar, the Parties reached an agreement to settle the Action on the terms set forth in this Agreement attached hereto as Exhibit 1.

For purposes of settlement only, the Parties stipulate to the issuance of an FLSA opt-in notice to each of the Eligible Settlement Participants and class certification of the Eligible Settlement Participants under Rule 23 of the Federal Rules of Civil Procedure which is defined as:

> All current and former overtime eligible employees of Nestlé USA's Solon, Ohio facility who were required to don and doff sanitary clothing and other protective equipment at any time from April 30, 2017 to April 30, 2020.

In addition, although defendants' records cannot verify this, opt-in plaintiff Denise Clark-Griffin claims to have worked at Nestlé USA's Solon, Ohio facility in a relevant role from June to August 2019.  Thus, the parties have agreed to include her in the definition of "Eligible Settlement Participants."

**B.**     <u>**The Settlement Terms**</u>

If approved by the Court, the Settlement will cover Representative Plaintiff and all of the Eligible Settlement Participants identified in Exhibit 1(A) who timely sign and return Consent and Release Forms and/or who do not submit timely opt-out notices.

The Total Eligible Settlement Amount is $254,750.00, which sum will cover: (a) all of the individual payments allocated to the Eligible Settlement Participants as described below; (b) Representative Plaintiff Arnetta Duncan-Watts's Representative Payment; (c) Class Counsel's attorney's fees and expenses; and (d) the employer's share of payroll taxes.  There is no reversion

4840-7385-7212.1

to Defendants from this sum and, conversely, in no event will Defendants' financial obligation under the agreement exceed this amount plus the Third Party Administrator's fee to administer the settlement.

$149,153.87 of the Total Eligible Settlement Amount is allocated for individual payments collectively to the FLSA and Rule 23 Settlements, which averages to an approximate $165.35 payment for each Eligible Settlement Participant.  From this amount, half ($74,576.93) is allocated to the FLSA Settlement and will be divided into liquidated damages payments allocated to the Eligible Settlement Participants as set forth in Exhibit 1(A) ("Individual Liquidated Damages Payments").

From this amount, the remaining $74,576.94 is allocated to the Rule 23 Settlement and will be divided into wage payments allocated to the Eligible Settlement Participants as set forth in Exhibit 1(A) ("Individual Wage Payments").  These individual payments are collectively referred to as "Individual Payments."

The Individual Payments are provided in Appendix 1 of the Settlement (attached as Exhibit 1(A) to this Joint Motion).  Any Individual Wage Payments allocated to Eligible Settlement Participants who opt-out of the Settlement or whose checks are not cashed or deposited within 90 days from issuance shall be paid to the Boys & Girls Clubs of Cleveland.  Any Individual Liquidated Damages Payments allocated to Eligible Settlement Participants who do not timely opt-in will be used to pay for the employer's share of payroll taxes in the event it exceeds the Parties' estimate of $8,639.11, with the remainder proportionally distributed to Eligible Settlement Participants who do timely opt-in as Additional Non-Wage Payments and paid as part of their Individual Liquidated Damages Payment.

4840-7385-7212.1

$5,000.00 of the Total Eligible Settlement Amount will be paid to Representative Plaintiff Arnetta Duncan-Watts, in addition to her Individual Payment, for her service as the Representative Plaintiff.  In addition, $91,957.02 of the Total Eligible Settlement Amount will be paid to Class Counsel for attorney's fees ($84,916.67) and expenses ($7,040.35) incurred.

In exchange, the Action will be dismissed with prejudice and the participating Eligible Settlement Participants will release the Released Parties from all federal, state and local wage-and-hour claims, rights, demands, liabilities and causes of action asserted in the Action, the Complaint, the Amended Complaint, and all other claims pertaining to Defendants' alleged non-payment of unpaid wages, including but not limited to wages for time allegedly spent donning or doffing and associated travel and including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorney's fees, and expenses and including but not limited to claims under Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act up to the Effective Date (the "Released Claims").

The Individual Payments for which Eligible Settlement Participants are eligible have been calculated proportionally based on each Eligible Settlement Participants' alleged overtime damages during the Calculation Period depending on their tenure in a relevant role and hourly rate, after accounting for a minimum payment of $20.00.  The Calculation Period for the Eligible Settlement Participants means the period between April 30, 2017 and April 30, 2020.

To inform Eligible Settlement Participants of the Settlement, the Parties have submitted, as Exhibit 4 (which is also attached to the Settlement as Exhibit 2), the proposed Notice of Settlement of Lawsuit with an attached Consent and Release Form.  The Notice will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendants, and any updated addresses obtained by the Settlement Administrator.

The Eligible Settlement Participants who timely sign and return Consent Forms and/or do not timely opt-out will participate in the Settlement and their claims will be released.

## III.    THE FLSA SETTLEMENT SHOULD BE FINALLY APPROVED

The proposed FLSA Settlement is subject to approval by the Court pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  As shown in the attached Declaration of Class Counsel Jeffrey J. Moyle, and as explained below, Court final approval of the FLSA Settlement is warranted on all scores.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness."  *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"  *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).  As shown below and in the Jeffrey J. Moyle Declaration (*see* Exhibit 5), the standard supports approval of the FLSA Settlement.

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable."  *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)).  All components of the proposed distribution are

proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and the Eligible Settlement Participants.

Each of the Parties' counsel has extensive experience litigating FLSA claims and there is no fraud or collusion.  The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming.  The Parties have engaged in substantial investigation prior to and during the negotiations, and the issues are well understood by both sides.  The outcome of trial is uncertain for the Eligible Settlement Participants, and the risks of continued litigation are evident for both sides.  The opinions of experienced counsel of the Parties support the Settlement, as does the Representative Plaintiff.

If approved by the Court, the Proposed Settlement will provide adequate payments to the participating Eligible Settlement Participants for alleged unpaid overtime compensation and liquidated damages that totals $149,153.87 for the period between April 30, 2017 to April 30, 2020, and averages approximately $165.35 per person.  Pursuant to the Settlement, each Eligible Settlement Participant who participates in the FLSA Settlement by submitting a timely opt-in form will receive an Individual Liquidated Damages Payment in an amount equal to 50% of their total eligible settlement payment as set forth in Appendix 1, with the potential of receiving an Additional Non-Wage Payment if Eligible Settlement Participants elect not to timely submit an opt-in form. As set forth below, the Eligible Settlement Participant would receive the other 50% of their total eligible settlement amount as set forth in Appendix 1 for alleged unpaid wages if they do not affirmatively opt-out of the Rule 23 Settlement.

Accordingly, the FLSA Settlement proceeds are fair, reasonable and adequate.  The Court should therefore grant final approval of the FLSA Settlement.

## IV.    THE RULE 23 SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

4840-7385-7212.1

The proposed Rule 23 Settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e).  As shown below, the Court's preliminary approval is warranted.

### A.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

A proposed settlement class must satisfy the requirements of Rule 23.  *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007).  The proposed Rule 23 Class satisfies those requirements.

For purposes of settlement, the Parties stipulated that the proposed class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation.  *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976).  There approximately 900 Eligible Settlement Participant so the proposed class is "so numerous that joinder of all members is impracticable."  Common issues of law or fact are presented by the Eligible Settlement Participant's claims, including:

    a)  Whether Defendants unlawfully failed to pay Plaintiff and the Eligible Settlement Participant for all hours worked, including but not limited to overtime for "off the clock" work in the form of donning and doffing time and associated travel time; and

    b)  Whether the alleged "off the clock" work is compensable to Plaintiff and the Eligible Settlement Participants.

Representative Plaintiff is an adequate representative of the proposed class, in that she has common interests with other class members and she has vigorously prosecuted the interests of the class through qualified counsel.  *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The proposed class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority.  *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626.  The unpaid overtime issues presented predominate over any individual questions.  Class-wide resolution of this controversy is superior to the alternative of litigating 900 individual suits.  *General Tel. Co. v.*

11

*Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

B.     **THE CLASS NOTICE SATISFIES RULE 23 AND DUE PROCESS**

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement.  *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *UAW v. General Motors Corp.,* 497 F.3d at 626.  Reasonable notice to class members is required by due process as well.  *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the last known addresses shown in the defendant's business records.  *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied*, 423 U.S. 864 (1975). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action."  *Grunin*, 513 F.2d at 121.

In the present case, the proposed Class Notice (Exhibit 4) satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the Notices will be sent to Eligible Settlement Participants by a professional Settlement Administrator via first-class mail using the last known addresses shown in Defendants' records, with address updating

12

through the process. Among other things, the Notice clearly explains that Eligible Settlement Participant can receive an Individual Wage Payment by doing nothing and receive at a minimum an equal Individual Liquidated Damages Payment by timely submitting the provided opt-in form. *See* Exhibit 4, page 2.

## C.   APPROVAL OF THE SETTLEMENT UNDER RULE 23(E) IS WARRANTED

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d at 626. The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1.   The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d at 626.

As shown below and in the declaration of Jeffrey J. Moyle (*see* Exhibit 5), the seven-factor standard supports approval of the Settlement.

### a)   *No Indicia of Fraud or Collusion Exists*

13

The Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked.  A Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties.  Additionally, the Settlement was achieved during an extensive mediation with a well-known and well-respected mediator, Mike Ungar.  As such, there is no indicia of fraud or collusion.

> **b)** **The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval**

The policy favoring the settlement of class actions and other complex cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  Moreover, the Parties continue to disagree over the merits of Plaintiffs' claims.  The Parties disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied.  Defendants claim that even if Plaintiffs succeed on the merits, Plaintiffs cannot not prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period.

Discovery would be expensive as there are approximately 900 Eligible Settlement Participants, which would necessitate a great deal of expense to be expended by the Parties in taking discovery, such as depositions, which would include expenses related to extensive travel. With a case this size, the out-of-pocket expenses and attorney's fees expended in protracted litigation could potentially dwarf the wages allegedly owed to the Eligible Settlement Participants.

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling.  The Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

c)  *Investigation Was Sufficient to Allow the Parties to Act Intelligently*

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement.  Relevant information was exchanged including an in-depth analysis of Eligible Settlement Participants' alleged overtime damages resulting from Plaintiff's allegations that Defendants failed to pay Eligible Settlement Participants for all hours worked, including but not limited to potential overtime for alleged "off the clock" work in the form of time spent donning and doffing.  Defendants provided copies of its policies to Class Counsel which stated that employees are required to be compensated for the at-issue donning and doffing time.  Defendants also provided information showing that its policy with respect to compensating employees for donning and doffing time was previously approved by the Department of Labor.  In addition, Class Counsel obtained investigation notes from Representative Plaintiff and numerous other Eligible Settlement Participants, and the legal issues in the case were thoroughly researched by counsel for the Parties.  All of aspects of the dispute are well-understood by both sides.

d)  *The Risks of Litigation Favor Approval*

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result.  Moreover, in the present case, Defendants raise affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Defendants also raised factual defenses that, even if the disputed time were added, in most instances it would make no difference as Eligible Settlement Participants regularly worked fewer than 40 hours per week, had a number of paid company holidays, vacation time, and other paid leave benefits.  Defendants also asserted that the disputed time is de minimis and thus not compensable.  Continued litigation would be risky for all.

e)  *Uncertainty of Recovery Supports Approval*

Plaintiffs' range of possible recovery is also open to dispute. If forced to litigate, Defendants would dispute that the class should be certified, and there is no certainty that Plaintiff would obtain Rule 23 Certification, leaving Eligible Settlement Participants unable to recover any alleged overtime compensation. Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### f)    *Experienced Counsel's Views Favor Approval*

The Parties' counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole, as described in the Jeffrey J. Moyle Declaration (*see* Exhibit 5).

### D.    THE SETTLEMENT DISTRIBUTIONS ARE FAIR, REASONABLE AND ADEQUATE

### 1.    The Individual Payments Are Reasonable and Adequate

All Individual Payments were calculated proportionally based on the significant total recovery and each Eligible Settlement Participant's tenure in a relevant role and hourly rate, with a minimum gross Individual Payment of $20.00. The Settlement provides that Eligible Settlement Participants are eligible to recover a total of $149,153.87 in compensation for the period between April 30, 2017 to April 30, 2020.

Pursuant to the Settlement, each Eligible Settlement Participant who does not opt-out of the Settlement will receive 50% of their eligible payment in the form of an Individual Wage Payment, for alleged unpaid wages. Additionally, all Eligible Settlement Participants who sign and return the Consent and Release form (which is part of the proposed Class Notice attached as Exhibit 3) as part of the FLSA Settlement will receive the other 50% of their eligible payment in the form of an Individual Liquidated Damages Payment for alleged liquidated damages, with the

16

potential of receiving an Additional Non-Wage Payment if Eligible Settlement Participants elect not to timely submit an opt-in form.  Accordingly, the settlement proceeds are fair, reasonable and adequate.

### 2. Representative Plaintiff's Service Award Is Proper and Reasonable

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper.  As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373; *see also Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)).  *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, the Jeffrey J. Moyle Declaration (*see* Exhibit 5) establishes that the proposed Service Award is proper and reasonable.  Representative Plaintiff Arnetta Duncan Watt's

17

services were extensive and effective.  In addition to discovering Defendants' alleged failure to pay Plaintiff and other similarly-situated overtime eligible employees for all hours worked, she provided extensive factual information to Class Counsel and faithfully engaged in calls and other communications with Class Counsel.  Moreover, she subjected herself to the responsibilities of serving as a named plaintiff in a lawsuit against her former employer and has agreed to enter into an Individual Settlement Agreement attached as Exhibit 2 (and attached to the Settlement as Exhibit 1).

### 3. The Attorney's Fees and Expenses to Class Counsel Are Proper and Reasonable

The Settlement contemplates and requests a total attorney's fee award to Class Counsel of one-third the Total Eligible Settlement Amount, or $84,916.67, and an additional $7,040.35 in expenses.  The Parties request that the Court award half this total amount – or $45,978.51 – as part of the final FLSA Settlement approval and preliminarily approve the other half – or $45,978.51 – as part of the Rule 23 Settlement.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).  The OMFWSA, which is interpreted in accordance with the FLSA,[1] also provides that the defendant is liable for "costs and reasonable attorney's fees." O.R.C. § 4111.10.

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney's fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and

---

[1] *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, at n. 2 (6th Cir. 1997); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006).

4840-7385-7212.1

hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."  *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir. 1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorney's fee award in an FLSA settlement very much like the one presented here.  Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each Eligible Settlement Participant were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved")).  *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America*

*Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. Many of the Eligible Settlement Participants arguably would not have been entitled to any overtime compensation even if Plaintiffs prevailed on the merits because they did not work enough hours. Moreover, all the Eligible Settlement Participants would have been subject to the numerous defenses raised by Defendants, which cast their potential recovery in doubt. However, under the Settlement, Eligible Settlement Participants are eligible for overtime damages for every week they worked in a relevant role during the Calculation Period.

The attorney's fees requested by Class Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

4840-7385-7212.1

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation.  At every step of the litigation, Defendants could have succeeded.  Therefore, the Eligible Settlement Participants were at great risk for non-payment.  This risk of non-payment strongly supports the amount requested here and warrants notice to the class of Plaintiffs' attorney's fee request.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## V.     PRODUCTION OF INFORMATION TO THE SETTLEMENT ADMINISTRATOR

To facilitate the settlement, Defendants have engaged Third-Party Settlement Administrator Rust Consulting, Inc. to, among other things, issue the approved notice to Eligible Settlement Participants and issue settlement payments.  To fulfill its obligations, Rust requires information regarding the Eligible Settlement Participants such as their names, last known addresses, and social security numbers.  The Parties therefore request that the Court order Defendants to provide this information to Rust within 14 days of entry of any Order approving this motion.  The Court's ordering the production of this information is a material part of the Settlement.

## VI.    CONCLUSION

Representative Plaintiff and Defendants request that the Court approve the Settlement attached as Exhibit 1, enter the Order attached Exhibit 3 to effectuate the Parties' Settlement as requested herein, grant final approval of the FLSA Settlement, grant preliminary approval of the Rule 23 Settlement, and set a final approval hearing for the Rule 23 Settlement at a date no sooner than 110 days after the Court grants the Parties' Motion.

4840-7385-7212.1

Respectfully submitted,

/s/*Jeffrey J. Moyle (via consent)*              /s/ *Gregory V. Mersol*
Hans A. Nilges                                   Gregory V. Mersol (0030838)
Jeffrey J. Moyle                                 Gilbert Brosky (0079855)
Nilges Draher LLC                                BAKER & HOSTETLER LLP
7266 Portage Street NW                           Key Tower
Suite D                                          127 Public Square, Suite 2000
Massillon, OH 44646                              Cleveland, OH  44114-1214
Phone:  234-401-9089                             Telephone:  (216) 621-0200
jmoyle@ohlaborlaw.com                            Facsimile:  (216) 696-0740
hans@ohlaborlaw.com                              gmersol@bakerlaw.com
                                                 gbrosky@bakerlaw.com

                                                 Attorneys for Defendant

4840-7385-7212.1