UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ARNETTA DUNCAN-WATTS, on behalf of herself and all others similarly situated, | CASE NO.: 1:19-cv-01437 |
| | CHIEF JUDGE PATRICIA A. GAUGHAN |
| Plaintiff, | |
| vs. | **JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| NESTLE USA, INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Arnetta Duncan-Watts ("Representative Plaintiff," "Class Representative," or "Plaintiff"), on behalf of herself and the members of proposed settlement Class ("Eligible Settlement Participants"), and Defendants Nestlé USA, Inc. and Nestlé Prepared Foods Company ("Defendants") respectfully move this Court for final approval of the Rule 23 component of their Settlement and Release Agreement (the "Settlement").[1]

As the Court is aware, the Settlement has both a Rule 23 Settlement component (the "Rule 23 Settlement") and an FLSA Settlement component (the "FLSA Settlement") to cover the largest number of participants. On July 14, 2020, the Parties filed their Joint Motion for Final Approval of the FLSA Settlement and Preliminary Approval of the Rule 23 Settlement. (Motion for Preliminary Approval, ECF 35.)

On July 17, 2020, this Court entered an Order granting the Parties' motion, granting final approval of the FLSA Settlement, preliminarily approving the Rule 23 Settlement and setting forth

---

[1] Unless otherwise stated, all terms herein have the same meaning and definition as set forth in the Settlement and the Court's July 17, 2020, Order).

the required settlement administration procedures. (Preliminary Approval Order, ECF 36) (the "Order"). The Order preliminarily found that "[t]he proposed class of Eligible Settlement Participants satisfies Rule 23(a)'s requirements of commonality, numerosity, typicality, and adequacy of representation, as well as Rule 23(b)'s requirements of predominance and superiority" and that "the proposed Rule 23 Settlement is fair, reasonable and adequate as to the Rule 23 Class for settlement purposes only." (*Id.* at Sec. V., ¶ 3).

The Parties have complied with the Court's ordered settlement procedure, as summarized in the attached Declarations of Jeffrey Moyle (attached as Exhibit 1) and Jennifer Smith for Rust Consulting, Inc. ("Rust") (attached as Exhibit 2). Thus, and for the reasons more fully discussed below, the Parties respectfully request that the Court grant final approval to the Parties' Rule 23 Settlement and enter the attached proposed Final Order and Judgment Entry (attached as Exhibit 3). Specifically, and as fully stated in the attached proposed final order, the Parties request that the Court:

1. Find that the Rule 23 Class Notice given to the Rule 23 Class members was reasonable and the best notice practicable, and satisfied all of the requirements of Civ. R. 23 and due process;

2. Find that the proposed Rule 23 settlement class satisfies Rule 23(a)'s requirements of commonality, numerosity, typicality, and adequacy of representation, as well as Rule 23(b)'s requirements of predominance and superiority;

3. Find that representative Plaintiff Arnetta Duncan-Watts is an adequate representative of the Rule 23 Class;

4. Find that the proposed Rule 23 Settlement is fair, reasonable, and adequate as to the Rule 23 Class, and qualifies for final approval under Rule 23(e);

5. Approve the method of calculation and proposed distribution of the Individual Wage Payments, as provided in Appendix 1 to the Settlement, to the Rule 23 Class Members who did not timely opt-out of the Settlement by submitting a timely and proper request for exclusion as described in their Rule 23 Class Notice ("opt-out request");

6. Approve the Service Award to Representative Plaintiff and order that such payment be made in the manner, and upon the terms and conditions, set forth in the Settlement;

7. Approve the payment of attorney's fees and expenses as provided in the Settlement as to the Rule 23 Settlement, and order that such payments be made in the manner, and upon the terms and conditions, set forth in the Settlement; and

8. Find that Representative Plaintiff and Rule 23 Class Members who did not submit opt-out notices are deemed to have signed and agreed to the Settlement and accordingly are found to have released all Released Claims against the Released Parties as provided in the Settlement and all such Rule 23 Class Members and their successors are permanently enjoined from asserting any Released Claims against the Released Parties.

## II.     SUMMARY OF THE COURT'S PRIOR ORDER AND THE REMAINING ISSUES

The Court's prior Order resolved many of the issues and individual claims in this case. For instance, the Order dismissed with prejudice the claims of Representative Plaintiff, the Additional Opt-Ins, the current Opt-Ins, and the Eligible Settlement Participants who would eventually sign and return the Consent and Release Form to receive an Individual Liquidated Damages Payment and approved the amount of these payments. (ECF 36, Sec. IV, ¶¶ 4, 5 and 9). As set forth below, 266 of the 902 Eligible Settlement Participants subsequently signed and returned a Consent and Release Form, so their claims have already been dismissed and their Individual FLSA Payments/Individual Liquidated Damages Payments were approved pursuant to the Order. The Order also granted final approval for the payment of attorney's fees and costs as to the FLSA Settlement in the amounts set forth in the Settlement. (*Id.* at ¶ 8).

The Order also preliminarily certified the Rule 23 Class pursuant to Rule 23(a) and (b)(3), approved the Rule 23 Class Notice for distribution, preliminarily approved the payment of attorney's fees and costs to class counsel for the Rule 23 Settlement as set forth in the Settlement, and preliminarily approved the Individual Wage Payments to the Rule 23 Class Members who did

3

not ultimately submit a timely opt-out request.  (*Id.* at Sec. V., ¶¶ 3, 4, 6 and 7).  The Order also stated that, subject to final approval, each Rule 23 Class Member who did not subsequently submit a timely opt-out would be deemed to have signed the Settlement, including the release of Released Claims as defined in the Settlement.  (*Id.* at ¶ 17).  It is these items, previously approved on a preliminary basis, that are now before the Court for requested final approval.

**III.     SUMMARY OF SETTLEMENT ADMINISTRATION AND NOTICE PROCESS**

A summary of the litigation, the terms of the Settlement, and the fairness and adequacy of the Rule 23 Settlement, including the reasonableness and adequacy of the Individual Wage Payments, are set forth in the Parties' Joint Motion for Preliminary Approval and related declarations as well as the Court's Order, which the Parties incorporate by reference.  (*See* ECF 35; Order, ECF 36, Sec. V, ¶¶ 1-7.)

On July 28, 2020, in accord with the Order, Defendants provided the Settlement Administrator (Rust) with the last known addresses of the Class Members.  (Ex. 2, Smith Decl., ¶ 9.)  Rust updated the addresses using the National Change of Address Database prior to mailing the notice.  (*Id.* at ¶ 10.)

Rust obtained a facsimile number of (866) 591-7247 for receiving communications about the Settlement.  The facsimile number was included in the Class Notice.  (*Id.* at ¶ 6.)  Rust also obtained an email address for receiving communications about the Settlement.  The email address was included in the Class Notice.  (*Id.* at ¶ 7.)

On August 19, 2020, Rust mailed Class Notices to the 902 Class Members identified on the Class List via First Class Mail, in the form approved by the Court.  (*Id.* at ¶ 11.)  Rust performed 30 address traces on Class Notices returned as undeliverable for the first time as of October 5, 2020.  (*Id.* at ¶ 12.)  The address trace utilized the Class Members' name, previous address and Social Security Number for locating a current address.  (*Id.*)  Of the 30 traces performed, 18 more

current addresses were obtained, and Class Notices were promptly re-mailed to those Class Members via First Class mail. (*Id.*) Of the 30 traces performed, Rust did not obtain updated addresses for 12 undeliverable Class Notices. Of the 18 Class Notices mailed to a more current address identified from trace, five (5) Class Notices were returned to Rust as undeliverable a second time.

Rust received 266 Consent Forms from Class Members, which includes opt-in notices previously submitted to the Court. The names of these individuals are attached to the Smith declaration as Exhibit D.

Rust received four written exclusions from 23 Class Members. The names of the four Class Members who submitted written exclusion requests are attached to the Smith declaration as Exhibit E. Rust receive one objection to the Settlement from opt-in plaintiff Aaron Mustafa. (*Id.* at ¶ 16.) Mr. Mustafa submitted his objection based on his incorrect belief that he was not eligible to participate in the Settlement because his employment with defendant pre-dated the statute of limitations set forth in the notice. (Moyle Decl., ¶ 4). However, because Mr. Mustafa was already an opt-in plaintiff, he was eligible to participate in the settlement and, in fact, the parties specifically agreed to Mr. Mustafa's inclusion in paragraph 5 of the settlement. (ECF 35-1, ¶ 5). Class counsel contacted Mr. Mustafa to explain this to him and he agreed to withdraw his objection. (Moyle Decl., ¶¶ 6-8).

The names of the Class Members who did not submit a written exclusion and their proposed Individual Wage Payments (which require the Court's final approval) are attached to the Smith declaration as Exhibit G.

## IV. CALCULATION OF INDIVIDUAL WAGE PAYMENTS

The list of Eligible Settlement Participants and their schedule of proposed Individual Payments was attached as Appendix 1 to the Settlement and filed with the Parties' motion for

5

preliminary approval. (Schedule of Individual Payments, ECF 35-2). As discussed in the Order, the proposed Individual Payments were broken down as Individual Liquidated Damages Payments and Individual Wage Payments. (Order, ECF 36, Sec. II.) Eligible Settlement Participants would receive half their total eligible individual payment as an FLSA "Individual Liquidated Damages Payment" if they submitted a timely opt-in form, and the other half as an "Individual Wage Payment" for their alleged lost wages under Rule 23 if they did not timely opt-out of the proposed class. (*Id.* at pp. 2-3). In addition, Eligible Settlement Participants who timely sign and return the opt-in notice will receive a proportional share of any liquidated damages allocated to Eligible Settlement Participants who did not timely opt-in as additional liquidated and other available non-wage relief under the FLSA and Ohio law and be paid as part of their Individual Liquidated Damages Payment ("Additional Non-Wage Payment").

The Order granted final approval of the Individual FLSA Payments and Individual Liquidated Damages Payments (including the Additional Non-Wage Payments) as part of the FLSA Settlement and ordered that they be paid to any Eligible Settlement Participant who submitted a Consent and Release Form as set forth in the Settlement and the Schedule of Individual Payments. (ECF 36, Sec. IV, ¶ 4).

Thus, the only proposed payments to the class members under the Settlement that require additional Court approval are the proposed Individual Wage Payments. Under the Settlement, the Individual Wage Payments are payable to any Class Member who did not submit a timely exclusion request. A list of the Class Members who did not opt-out and their proposed Individual Wage Payments – which are the same as those set forth in Appendix 1 to the Settlement and preliminarily approved in the Order – are attached to the Smith declaration as Exhibit G.

6

As with all the Individual Payments, the Individual Wage Payments were calculated based on each Eligible Settlement Participant's alleged overtime damages during the Calculation Period depending on their tenure in a relevant role, with each Eligible Settlement Participant entitled to a minimum total Individual Payment totaling $20.00. (Exhibit 1, Moyle Declaration, ¶ 9). The Parties respectfully request that the Court grant final approval of the proposed Schedule of Individual Wage Payments, as set forth in Appendix 1 of the Settlement and Exhibit G to the Smith Declaration, as to the 898 Rule 23 Class Members who did not provide a written request to be excluded from the Settlement.

## V. ARGUMENT

### A. The Court Should Grant The Parties' Request For Final Approval Of The Rule 23 Settlement, Including The Service Award, Attorney's Fees, Individual Wage Payments And Litigation Costs

#### 1. Standard for Final Approval of a Class Settlement

Federal Rule of Civil Procedure 23 provides that the claims of a certified class "may be settled" "only with the court's approval." Fed. R. Civ. P. 23(e). Three steps must be taken by the court in order to approve a class action settlement under Rule 23 and the Fair Labor Standards Act: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must" determine whether the settlement is fair, reasonable, and adequate. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

Courts in the Sixth Circuit consider the following seven factors in assessing whether a class action settlement is fair, reasonable, and adequate: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the [action]; (3) the amount of discovery engaged in by the Parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and

7

[the] class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Vukovich*, 720 F.2d at 922-23. "The law generally favors and encourages the settlement of class actions" and after the court preliminarily approves such a settlement, it is considered to be presumptively reasonable. *See Reed v. Rhodes,* 869 F. Supp. 1274, 1279 (N.D. Ohio 1994) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981)); *Vukovich*, 720 F.2d at 921 (citations omitted).

### 2. Application of Relevant Criteria

#### a) Risk of fraud or collusion

The courts "presume the absence of fraud or collusion" in class settlements unless there is evidence to the contrary. *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *In re Art Materials Antitrust Litig.,* 100 F.R.D. 367, 371 (N.D. Ohio 1983). Here, the Settlement "was achieved after arms-length and good faith negotiations between the Parties and their counsel, who have extensive experience litigating FLSA and corresponding state wage and hour claims. (Order, ECF 21, Sec. V., ¶ 2.) The Parties ultimately reached agreement assisted by attorneys with extensive experience litigating wage-hour class claims and a highly experienced neutral mediator, Michael Ungar. (*Id.* at Sec. II.)

Both sides acknowledged the risks each faced on the merits and class issue, and decided that settlement eliminated these risks, benefited the class and avoided further time and expense. Since the Parties were fully informed, engaged in arms-length negotiations, and were aided by experienced counsel, their agreement is free from fraud and collusion. (*See* ECF 35 and 36); *Leonhardt*, 581 F. Supp. 2d at 838.

### b) The complexity, expense, and likely duration of the litigation favor settlement

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Discovery would be expensive as there are 898 Class Members, which would necessitate a great deal of expenses by the Parties in taking discovery, such as depositions and extensive travel. (*See* Motion for Preliminary Approval, ECF 35, p. 14.) With a case this size, the out-of-pocket expenses and attorney's fees expended in protracted litigation could potentially dwarf the wages allegedly owed to the Rule 23 Class Members. (*Id.*)

The expense and delay Class Members would incur if they pursued their claims through trial and appeal must be balanced against the recovery provided by the Settlement. *See Dick v. Sprint Commc'ns Co.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014). Without settlement, trial would involve extensive testimony from numerous witnesses and voluminous exhibits. And any final judgment likely would be appealed, thereby extending the duration of the litigation.

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling. The Rule 23 Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. Settlement now avoids further expense and delay.

### c) Investigation was sufficient to allow the Parties to act intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement. The Relevant information was exchanged including an in-depth analysis of Eligible Settlement Participants' alleged overtime damages resulting from Plaintiff's allegations that Defendants failed

to pay Eligible Settlement Participants for all hours worked, including but not limited to potential overtime for alleged "off the clock" work in the form of time spent donning and doffing. Defendants provided copies of their policies to Class Counsel which stated that employees are required to be compensated for the at-issue donning and doffing time. Defendants also provided information showing that their policy with respect to compensating employees for donning and doffing time was previously approved by the Department of Labor. In addition, Class Counsel obtained investigation notes from Representative Plaintiff and numerous other Eligible Settlement Participants, and the legal issues in the case were thoroughly researched by counsel for the Parties.

Therefore, the issues in this action were thoroughly researched by both sides and all aspects of the dispute are well understood by the Parties. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556-57 (S.D. Ohio 2000).

### d) The likelihood of success on the merits

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiffs' likelihood of success at trial. Plaintiffs' claims are based on disputed issues of fact and law and Plaintiffs' success at trial is far from guaranteed. In sum, although Plaintiffs assert that the class claims are meritorious, the action certainly is not without risk. This factor thus weighs in favor of final approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendants raise affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Defendants also raised factual defenses that, even if the

10

disputed time were added, in most instances it would make no difference as Eligible Settlement Participants regularly worked fewer than 40 hours per week, had a number of paid company holidays, vacation time, and other paid leave benefits. Defendants also asserted that the disputed time is de minimis and thus not compensable.

Plaintiffs' range of possible recovery is also open to dispute. Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### e) Class counsel and class representative favor settlement

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, class counsel believes the settlement is fair, reasonable, and adequate. (*See* Moyle Decl., ECF 35-6, ¶¶ 13-16.) Class counsel have experience in wage-and-hour class actions, have acted in good faith, and have vigorously represented their clients in negotiating the settlement. (*Id.*).

### f) The reaction of absent class members

The absence of class member objection indicates that the class supports the settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008).

Here, notice of the proposed settlement was sent to 902 Class Members in accord with the Court's Preliminary Approval Order. (Ex. 2, Smith Decl. ¶ 11.) Class Members were informed of their right to object to or opt out of the settlement and they were provided 45 days to do so. Of the 902 putative Class Members, only four opt-out requests were submitted. (*Id.* at ¶ 15). Thus,

898 Class Members would be included in the Rule 23 Settlement. Only one objection was received by Rust or class counsel and it was subsequently withdrawn. None were filed directly with the Court. (*Id.* ¶ 16(v); Ex. 1 at ¶ 3.) These facts all indicate approval of the Rule 23 Settlement. Accordingly, this factor favors final approval of the Rule 23 Settlement.

### g) Settlement is in the public interest

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The Settlement ends complex litigation that has been pending for nearly a year, provides substantial relief to class members and avoids protracted, costly litigation. *See Brotherton*, 141 F. Supp. 2d at 905-06. The terms of the Settlement are equitable and provide a reasonable resolution of the action. As set forth above and in the Order, the settlement proceeds are fair, reasonable and adequate.

## VI. CONCLUSION

For the above reasons, and for the reasons stated in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement (ECF 35), the proposed and preliminarily approved Rule 23 Settlement should be finally approved by the Court, including the representative payment, Individual Wage Payments, attorney's fees, and litigation costs. The Parties submit a proposed Final Order reflecting the terms of the Agreement and consistent with the Court's preliminary order. (*See* Exhibit 3.) The Rule 23 Settlement is fair, reasonable, and adequate and provides Class Members a substantial benefit, given the meaningful risks and substantial expense associated with continued litigation.

Respectfully submitted,

| | |
|---|---|
| /s/*Jeffrey J. Moyle (via consent)* | */s/ Gregory V. Mersol* |
| Hans A. Nilges | Gregory V. Mersol (0030838) |
| Jeffrey J. Moyle | Gilbert Brosky (0079855) |
| Nilges Draher LLC | BAKER & HOSTETLER LLP |
| 7266 Portage Street NW | Key Tower |
| Suite D | 127 Public Square, Suite 2000 |
| Massillon, OH 44646 | Cleveland, OH 44114-1214 |
| Phone: 234-401-9089 | Telephone: (216) 621-0200 |
| jmoyle@ohlaborlaw.com | Facsimile: (216) 696-0740 |
| hans@ohlaborlaw.com | gmersol@bakerlaw.com |
| | gbrosky@bakerlaw.com |
| | |
| | Attorneys for Defendant |